

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable George H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Sir:

Opinion No. O-2764
Re: Whether or not the stores
owned by a partnership and
a corporation constitute one
chain instead of two chains
by virtue of the same group
of persons controlling both
concerns; and whether or not
a husband is deemed to con-
trol the shares of stock own-
ed by his wife.

This is in answer to your request for our opin-
ion on whether or not under the fact situation you give,
the stores operated by "the X grocery chain" and the stores
operated by "the Y grocery chain" constitute one chain or
two chains. According to the facts that you have given
us in your letter and in our subsequent conference with
you, "the X grocery chain" is a partnership (hereinafter
called "partnership X") that operates several grocery
stores, and said partnership is owned by five persons, di-
vided as follows:

A owns 47.15% of the partnership;
B owns 27.28% of the partnership;
C owns 16.99% of the partnership;
D owns 5.40% of the partnership;
E owns 3.18% of the partnership;

The information you give shows that "the Y grocery chain"
is a corporation (hereinafter called "corporation Y") that
operates several grocery stores, and said corporation has

1300 outstanding shares, owned in part as follows:

> A owns 103 shares;
> A's wife owns 508 shares;
> C owns 104 shares.

The remaining shares in "corporation Y" are divided among a large number of other persons, none of said other persons owning more than a few shares each.

According to the information you have given us, the parties in said "partnership X" have a vote and voice in the control of the partnership in proportion to their interest. We presume that such is the case by virtue of a partnership agreement.

You state that A and C are the same persons in both "partnership X" and "corporation Y."

In determining whether the stores operated by "partnership X" and those operated by "corporation Y" constitute one chain or two separate chains, we must decide whether or not all of said stores are "ultimately controlled or directed by one management or association of ultimate management." Sections 6 and 7 of the Texas Chain Store Tax Law (House Bill No. 18, Acts 1935, 44th Legislature, 1st Called Session, and which is codified as Article 1111d in Vernon's Annotated Penal Code of Texas) provide as follows:

> "Sec. 6. The provisions of this Act shall be construed to apply to every person, agent, receiver, trustee, firm, corporation, copartnership or association, either domestic or foreign, which is controlled or held with others by majority stock ownership or ultimately controlled or directed by one management or association of ultimate management."

> "Sec. 7. The term 'store' as used in this Act shall be construed to mean and include any store or stores or any mercantile establishment or establishments not specifically exempted within this Act which are owned, operated, maintained, or controlled by the same person, agent, receiver, trustee, firm, corporation, copartnership

or association, either domestic or foreign, in
which goods, wares, or merchandise of any kind
are sold, at retail or wholesale."

In the case of H. E. Butt Grocery Co., v. Sheppard,
137 S. W. (2d) 823 (writ of error refused) the Court of Civil
Appeals at Austin, held that by virtue of said Sections 6
and 7 if one person owned a majority of the stock in two or
more corporations all of the stores operated by said cor-
porations constituted one chain; and the court said:

"Sec. 6 was manifestly intended to prevent
large chains of stores, which receive the bene-
fits flowing from such system (considered and
enumerated in part by the U. S. Supreme Court in
State Board of Tax Com'rs. v. Jackson, 283 U. S.
527, 51 S. Ct. 540, 75 L. Ed. 1248, 73 A. L. R.
1464, 75 A. L. R. 1536, and in Hurt v. Cooper,
130 Tex. 433, 110 S. W. (2d) 896, sustaining
the validity of the Act as constituting a reason-
able classification), from circumventing the tax
burdens imposed under the Act, by organizing
separate corporations to operate them, the
capital stock of which, or a majority of it, be-
ing owned by a parent corporation or holding
company, or by an individual or association of
individuals.  Thus through a common management
or control over a number of individual units or
corporations the clear purpose of the law would
be defeated. * * *

"* * * The ownership by Butt of 83% of the
stock in one corporation, and of 75% of the stock
in the other, gave him such unified control of
both corporations, through such stock ownership,
as to bring the stores owned and controlled by
such separate corporations under the provisions
of the Act; and required that they be treated
as one chain for tax purposes. * * *"

In this case you have asked about, no one person
owns a majority of the stock or interest in both the partner-
ship and the corporation, or even in one of them.  A, A's
wife, and C, together, own a majority of the stock in "cor-
poration Y"; and A and C, together, own a majority of the

Honorable George H. Sheppard, Page 4

interest in "partnership X".

In Attorney General's Opinion No. O-400, dated March 10, 1939, we made a holding in language as follows:

"It is our belief that the phrase 'which is * * * controlled * * * by one management or association of ultimate management' in Section 6, and the phrase 'stores * * * controlled by the same copartnership or association' in Section 7, does not mean that the control or management must be in one individual person, but it means what it says, and that is the stores are in the same chain if the control and management is in the same association or copartnership. By the same association or copartnership as used there is meant the same group of people.

"If a group of three men, or any other number, could restrain or govern, or had authority over several stores, having authority over some of the stores by virtue of owning a majority of the stock of the corporation that held the title to those stores, and having authority over the other stores by virtue of being majority owners of the partnership that owned them, then those stores would all be in the same chain just the same as if one individual person controlled all of the stores."

We still adhere to that opinion. We believe it is supported by the recent case of Florida Industrial Commission v. Gary-Lockhart Drug Company, Inc., (Sup. Ct. of Fla.) 196 So. 865, in which it was held that four separate corporations should be considered as one employment unit for tax purposes under the Florida Unemployment Compensation Law by virtue of the fact that the same group of persons owned a majority of the stock in each of the corporations, although no single person owned a majority of the stock in any of said corporations. In that case the court said:

"The ownership of stock in the four corporations, as disclosed by the record, is as follows:

"'Perry Corporation:

Honorable George H. Sheppard, Page 5

"'Estate of C. W. Gary    49 shares
"'P. O. Lockhart          49 shares
"'Claude W. Gary           1 share
"' Celia J. Gary           1 share
   "(each share of equal value)

"Foley Corporation:
"Gary Estate             36 shares
"P. O. Lockhart          37 shares
"G. C. Scruggs           26 shares
"Celia J. Gary            1 share
   "(each share of equal value)

"Port St. Joe Corporation:
"Celia J. Gary            2 shares
"G. W. Gary              36 shares
"P. O. Lockhart          37 shares
"Bernice Lockhart         1 share
"Unissued               33 shares
   "(each share of equal value)

"Leesburg Corporation:
"W. J. Taylor            33 shares
"P. O. Lockhart          33 shares
"C. W. Gary              34 shares
   "(each share of equal value)'

"No one of the four corporations employs
as many as eight people, but considering the
four as a single employment unit, eight people
or more are employed.

     "* * *

     "It is admitted on the record that a major-
ity of the stock in each of the four corpora-
tions is owned by a common interest unit, to-wit,
P. O. Lockhart and the Gary Estate. The statute,
supra, provides that an employing unit, together
with one or more employing units, when owned or
controlled directly or indirectly by the same in-
terests, or which owns or controls one or more
other employing units, and which, if treated as
a single unit with other employing units, or in-
terests, or both, would be an employer. * * *
the conclusion is inevitable that the four

Honorable George H. Sheppard, Page 6

corporations are an employment unit because
they are each under the control and ownership
of the same interests, to-wit: P. O. Lockhart
and Gary Estate. * * *"

In this case A and C together have the control
of "partnership X" by virtue of together owning 64.14% of
the interest in said partnership. As stated above, in this
partnership each partner has a vote and voice in the man-
agement of the partnership in proportion to his interest.

However, "corporation Y" is not controlled "by
the same copartnership or association," to-wit, A and C
unless the stock owned by A's wife is deemed in law to be
under the control of A. A and C together own 207 shares
of stock in said corporation, but there are 1300 outstand-
ing shares. A's wife owns 508 shares of stock in said
corporation, and if A is deemed in law as controlling the
stock owned by his wife, then A and C control a total of
715 shares, and would thereby together own a majority of
the stock and would control said corporation. The answer
to this question depends on whether the stock owned by
A's wife is the community property of her and her husband
or is her separate property.

"The statute (Article 4619, R. C. S.), except for
a short time -- from 1913 to 1925 -- has always vested the
right of control and disposition of the community property
in the husband." 23 Tex. Jur. 107. "Whatever is community
property is under the control, management and disposition
of the husband alone, whether it be the earnings of both
jointly, the earnings of the husband alone, or the earnings
of the wife alone." 23 Tex. Jur. 108. The two foregoing
sentences are based on Article 4619 of Vernon's Annotated
Revised Civil Statutes of Texas, of which Section 1 says:

"Sec. 1. All property acquired by either
the husband or wife during marriage, except that
which is the separate property of either, shall
be deemed the common property of the husband
and wife; and all the effects which the husband
and wife possess at the time the marriage may
be dissolved shall be regarded as common effects
or gains, unless the contrary be satisfactorily
proved. During coverture the common property
of the husband and wife may be disposed of by

Honorable George H. Sheppard, Page 7

the husband only; provided, however, if the
husband shall have disappeared and his where-
abouts shall have been and remain unknown to
the wife continuously for more than twelve
months, the wife shall after such twelve month
period and until the husband returns to her
and the affidavit hereinafter provided for is
made and filed for record, have full control,
management and disposition of the community
property, and shall have the same powers with
reference thereto as are conferred by law upon
the husband, and her acts shall be as those
of a femme sole. * * *"

In the case of Coleman v. Coleman, 293 S. W. 695, (writ of
error refused) the Court of Civil Appeals at San Antonio
said:

"* * * The words community property with us
are such as relate to property owned in common
between the husband and wife, a kind of marital
partnership, and by our statutes defined in arti-
cle 4619, R. S. Of such property, both under
the civil law and our statutes pertaining there-
to, the husband has always had the control and
power of disposition, and his dealings with such
has always appeared to be final and conclusive
where there are no restrictions. The wife seems
to have had only the right of partition upon the
termination of the marital rights. * * *"
(Underscoring ours)

See also the case of Stone v. Jackson, 109 Tex. 385, 210 S.
W. 953, and the text "Law of Marital Rights in Texas, 3rd
Ed." by Speer, page 173.

On the other hand the Constitution of Texas (Ar-
ticle XVI, Section 15) provides that a married woman can
own separate property, and the statute (Article 4614, R.
C. S.) gives the control of the wife's separate property
exclusively to the wife. Article 4614 of Vernon's Annotat-
ed Revised Civil Statutes of Texas, says:

"All property of the wife, both real and
personal, owned or claimed by her before marriage,

Honorable George H. Sheppard, Page 8

and that acquired afterward by gift, devise, or
descent, as also the increase of all lands thus
acquired, shall be the separate property of the
wife. The wife shall have the sole management,
control, and disposition of her separate prop-
erty, both real and personal; provided, however,
the joinder of the husband in the manner now
provided by law for conveyances of the separate
real estate of the wife shall be necessary to
the incumbrance or conveyance by the wife of
her lands, and the joint signature of the hus-
band and wife shall be necessary to a transfer
of stocks and bonds belonging to her or of
which she may be given control by this law."

In the case of Levin v. Jeffers, 122 Tex. 83, 58 S. W. (2d)
81, the Supreme Court of Texas said:

"* * * The granting to the wife of the
sole control and management of her separate
property by necessary implication clothed her,
in the making of contracts in respect thereto,
with all such incidental power as will render
effectual the power expressly granted. It must
be remembered that a married woman owns in her
own right her separate property. When as such
owner she was vested by law with its sole man-
agement and control, it must have been contem-
plated that her power in this respect should
be as broad and comprehensive as if she were
a single woman." (Underscoring ours)

In a discussion of the right of a married woman to own and
control separate property in 23 Tex. Jur. 88, it says:

"* * * she may own stock in a railroad or
any other private corporation, and she may ac-
quire the same in any of the ways usual, as by
purchase, gift, devise or descent. She may in
the same manner become the owner of bank stock,
and as such is subject to all statutory regula-
tions and assessments. Indeed, our statutes
expressly declare that charters may be subscrib-
ed by married women who may be stockholders,
officers and directors in private corporations.

Honorable George H. Sheppard, Page 9

> Our statutes of conveyance by the wife of
> stocks and bonds owned by her necessarily re-
> cognize her right of individual ownership."

Whether the stock owned by A's wife is community
property or her separate property is a fact question on
which you have not given us any information. If this stock
is community property it is subject to A's control, and in
such case A and C together control both "partnership X" and
"corporation Y". In other words "partnership X" and "cor-
poration Y" are "controlled by the same copartnership or
association." However, if the stock owned by A's wife is
her separate property she controls it, and A and C do not
control "corporation Y."

It is apparent by the foregoing discussion that
we cannot answer your questions categorically. We can only
say that if the stock in "corporation Y" owned by A's wife
is the community property of her and her husband then the
two organizations are "controlled by the same copartnership
or association," to-wit, A and C, and all of the stores
operated by the two organizations constitute one chain; but,
if the stock is the separate property of A's wife then the
two organizations are not controlled by the same copartner-
ship or association, and the stores operated by the two
organizations constitute separate chains.

APPROVED DEC 20, 1940

FIRST ASSISTANT
ATTORNEY GENERAL OF TEXAS

Yours very truly

ATTORNEY GENERAL OF TEXAS

By _Cecil C. Rotsch_
　　　　Cecil C. Rotsch
　　　　　Assistant

CCR:LM

